IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**UNITED STATES OF AMERICA**

v.   Criminal No. 2:14-cr-121

**RICKIE BAILEY, JR.,**

**Defendant.**

## OPINION AND ORDER

This matter comes before the Court upon the Motion to Suppress filed by Rickie Bailey, Jr. ("Defendant") on September 24, 2014. (ECF No. 18). On October 8, 2014, the Government filed a response. (ECF No. 19). On October 20, 2014, the parties appeared before the Court for a hearing on the Motion to Suppress. The Motion has been fully briefed and is ripe for review by this Court. For the reasons set forth below, the Court hereby **DENIES** the Defendant's motion to suppress.

### I.   FACTUAL BACKGROUND

The parties dispute the interpretation of the facts. The only evidence presented at the hearing, however, was the testimony of Officer Warren Prescott of the Chesapeake Police Department ("Prescott" or "Officer Prescott") and video footage from cameras worn by Officer Prescott and Officer Joel Ayala ("Ayala" or "Officer Ayala") during the entry and subsequent search of Defendant's property. Aside from the first thirty seconds of the video, which did not include audio, the video captured almost all of the officers' actions. The Court not only observed the first two-and-a-half minutes of the video during the hearing, but also reviewed the video in chambers after the hearing, repeatedly stopping the tape to analyze the footage in order to ensure

1

an accurate interpretation of events. Accordingly, the Court **FINDS** the following events occurred in the following order.

Sometime around 6:30 a.m. on April 24, 2014, Officer Prescott was conducting a foot patrol of the Sun Suites Hotel complex in Chesapeake, Virginia. Sun Suites is a multi-level motel with rooms that open to outdoor walkways. Upon arriving on the second floor of the hotel, Prescott detected the odor of burnt marijuana. Before investigating the source of the smell, Officer Prescott contacted Officer Ayala, who upon his arrival at the scene confirmed the odor of burnt marijuana to Prescott. Both determined that the strong odor was emanating from room 227. Unbeknownst to the officers at the time, Defendant was residing in room 227. After Officer Prescott knocked on the door to room 227 for approximately one minute, Defendant opened the door.

Once Defendant opened the door, Officer Prescott instantly noticed that the odor of marijuana became stronger and more apparent. Almost immediately, Prescott identified himself and Officer Ayala and informed Defendant that an odor of marijuana was coming from his room. Defendant then stepped into the walkway and continued to converse with the officers. As he did so, Defendant started to pull the door behind him. In response, Officer Prescott placed his foot against the doorjamb on the inside of the door to prevent it from fully closing.[1] Prescott then asked Defendant if the officers could enter the room to speak with him in order to avoid drawing attention to themselves as police officers or embarrassing Defendant. Defendant, according to Officer Prescott, gave his approval.

Once inside the room, Officer Prescott immediately performed a security sweep. After performing the sweep, Officer Prescott asked Defendant for his identification and leanred from

---

[1] According to Prescott, he took this action to avoid any possible loss of evidence because, at that time, he was unaware if any other persons were in room 227.

Defendant had registered the hotel room under his name. Officer Prescott then requested consent from Defendant to search the hotel room. Prescott informed Defendant that if he did not give consent, the officers would apply for a search warrant, which could take up to four hours. In the process of doing so, Defendant would be prohibited from leaving, having another person enter the room, and making any phone calls. Defendant then gave the officers permission to search.

Officer Prescott proceeded to search the room. His search revealed marijuana cigarettes and paraphernalia,[2] as well as eighteen debit cards, and a stack of Green Dot prepayable cards on the dining room table. None of the names on these cards matched Defendant's name. At this point, Prescott clearly and unmistakably gave Defendant Miranda warnings.[3] Subsequently, Officer Prescott continued his search and found a box under Defendant's bed. Inside the box, Prescott found a credit card writer device used to code credit cards, blank credit cards, and other credit cards that did not belong to Defendant.

At this point, Officer Prescott left the scene to call his supervisor and request that a fraud detective be called to the scene. When he returned, Prescott continued his search, finding a laptop as well as a notebook containing hundreds of names with corresponding social security numbers and dates of birth. Prescott also found more credit cards that did not belong to Defendant and various receipts. While Prescott was still sorting through the items retrieved in the search and asking Defendant questions, Defendant commented that he wanted to speak to a "detective or a lawyer."[4]

---

[2] Defendant was never charged with any criminal offenses regarding marijuana.
[3] Defendant's Motion claimed that the "[o]fficers also questioned in the hotel room while he was in custody and without advising him of his Miranda rights." (Mot. to Suppress, ECF No. 18, at 1). However, the video clearly and unmistakably shows that Prescott gave Defendant Miranda Warnings.
[4] As discussed herein, Officer Prescott testified that Defendant asked for a "detective or a lawyer." In the video, the content of Defendant's request is undecipherable. Defendant never introduced any evidence contradicting Officer Prescott's account, aside from a general refutation of Prescott's testimony. Accordingly, the Court adopts the

In the interim, the officers asked Defendant about a set of car keys, one of which had a Chevrolet emblem, that was found during the room search. Defendant responded that he had been dropped off at the hotel. Subsequently, Officer Ayala went to his police vehicle and began checking the license plates of all nearby Chevrolets. Ayala found one car, a Chevrolet with South Carolina plates, was registered in Defendant's name. Officer Prescott then asked for Defendant's consent search his vehicle, and Defendant gave his approval. During the search of Defendant's vehicle, Prescott found a check from H&R Block Tax Service in the amount of $8,481, made payable to Joseph Alvarez, as well as additional notebook pages containing names, with corresponding social security numbers and dates of birth.

Following the vehicle search, Detective Mike Fischetti of the Chesapeake Police Department arrived on the scene. Upon his arrival, he had a short conversation with Defendant about the names, identity information, and credit cards that had been found in the room and the car. Defendant admitted to being in possession of these items and using his own Wal-Mart debit card. Defendant, however, refused to admit that he used any other credit or debit cards or, for that matter, to any wrongdoing. It was around this time that Officer Prescott asked for Defendant's consent to search two operable cell phones that the officers had found in the room. In response to Prescott's request for consent, Defendant gave Prescott permission to search the cell phones. A search of the cell phones revealed more incriminating evidence.

As the search was completed, federal investigators arrived. After investigating the scene, the agents transported Defendant to the Chesapeake Police Department. Once at the department, Defendant was provided a written copy of <u>Miranda</u> Warnings, which Defendant signed. Subsequently, Defendant made incriminating statements regarding his involvement in obtaining

---

Government's version of the facts regarding this exchange.

credit card information and attempting to re-encode credit cards.[5]

Defendant was charged on August 21, 2014, in a three count Criminal Indictment: Count One for the production, use, or trafficking of a counterfeit access device in violation of 18 U.S.C. § 1029(a)(1); Count Two for the possession of fifteen (15) or more counterfeit or unauthorized access devices in violation of 18 U.S.C. § 1029(c)(3); and, Count Three for possession of device-making equipment in violation of 18 U.S.C. § 1029(a)(4). (ECF No. 14). On September 24, 2014, Defendant filed the instant Motion to Suppress.

## II. **MOTION TO SUPPRESS**

The instant Motion seeks to suppress (1) "all evidence sized by agents of the Chesapeake Police Department from his hotel room, cellular phone, and vehicle on April 24, 2014, as well as any statements made at that time" and (2) "any statements made on April 24, 2014 while the defendant was being questioned at the Chesapeake Police Department." (Mot. to Suppress, ECF No. 18, at 1). Specifically, Defendant seeks to suppress these evidence and statements on six grounds: (1) the arresting officer did not have a warrant or the necessary exigent circumstances to enter the hotel room; (2) the arresting officer did not have a warrant or the necessary exigent circumstances to search the hotel room; (3) the arresting officer did not have a warrant or the necessary exigent circumstances to search Defendant's vehicle; (4) the arresting officer did not have the warrant necessary to search the cell phone; (5) all statements given were the fruit of these illegal searches; and, (6) no government agents gave the necessary Miranda warnings until Defendant was transported back to the police station. The Government opposes the Motion, arguing that (1) Defendant gave consent for all relevant searches and (2) Miranda warnings were given when Defendant was in a custodial interrogation. At the hearing, counsel for Defendant

---

[5] Neither party provided any evidence that revealed the contents of Defendant's confessions.

raised another issue—arguing that Defendant invoked his right to counsel—and sought to suppress all statements made by Defendant after he allegedly invoked this right.

### A. Standard of Review

Motions to suppress are mixed questions of law and fact that are properly disposed of by the court without the assistance of a jury. United States v. Stevenson, 396 F.3d 538, 541 (4th Cir. 2005); FED. R. CRIM. P. 12(b)(3)(C), 12(d); FED. R. EVID. 104(a). In his Motion to Suppress, Defendant raises Fourth Amendment and Fifth Amendment issues. Consequently, the Court considers each issue accordingly.

### B. Fourth Amendment Issues

The Fourth Amendment provides in relevant part "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourth Amendment extends to protect places where an individual has a "reasonable expectation of privacy." Katz v. United States, 389 U.S. 347, 360, 88 S. Ct. 507, 516 (1967) (Harlan, J., concurring). A person clearly has a reasonable expectation of privacy in his home. See Kyllo v. United States, 533 U.S. 27, 31, 121 S. Ct. 2038, 2042 (2001). This protection extends to hotel rooms. See Stoner v. California, 376 U.S. 483, 490, 84 S. Ct. 889, 11 L.Ed.2d 856 (1964); United States v. Stevenson, 396 F.3d 538, 546 (4th Cir. 2005). The Fourth Amendment also extends to protect the contents of an individual's cell phone, Riley v. California, 134 S. Ct. 2473, 2494 (2014), as well as the interior, and other non-publicly accessible areas, of a person's automobile. See Hoffa v. United States, 385 U.S. 293, 301, 87 S.Ct. 408, 413 (1966) ("What the Fourth Amendment protects is the security a man relies upon when he places himself or his property within a constitutionally protected area, be it his home or his office, his hotel room or his automobile").

Defendant seeks to suppress all evidence, and statements made in relation to such evidence, found in the officers' entry and search of Defendant's hotel room, as well as the subsequent searches of Defendant's automobile and cell phones. As the officers' initial entry into the room carries distinct issues that do not arise with the searches of the Defendant's hotel room, car, and cell phones, the Court first considers the propriety of the officers' entry.

### 1. The Officers' Entrance into Defendant's Hotel Room

Defendant, through his counsel, contests whether there was any consent to the officers' initial entry into Defendant's hotel room. In light of the lack of any evidence contradicting Officer Prescott's account of the entry, the Court rejects Defendant's challenge.

"[W]arrantless searches and seizures inside a home are presumptively unconstitutional." United States v. Yengel, 711 F.3d 392, 396 (4th Cir. 2013). "Nevertheless, because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is *subject to certain exceptions*." Id. (quoting Brigham City v. Stuart, 547 U.S. 398, 403, 126 S. Ct. 1943, 164 L.Ed.2d 650 (2006) (emphasis added)). One exception to the warrant requirement is for searches conducted pursuant to valid consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44 (1973); see also United States v. Gardner, 554 Fed. App'x 165, 166 (4th Cir. 2014).

"In responding to a defendant's motion to suppress, the Government bears the burden of establishing, by a preponderance of the evidence, that it obtained valid consent to search." United States v. Buckner, 473 F.3d 551, 553–55 (4th Cir. 2007). Furthermore, to show consent to search was valid, the government must show that under the "totality of the circumstances" that the consent given by the defendant was knowing and voluntary. United States v. Scott, 463 Fed. App'x 216, 218 (4th Cir. 2012). In its review of the totality of the circumstances, a court can consider the "characteristics of the accused," including the suspect's "age, maturity, education, intelligence,

and experience," as well as "the conditions under which the consent to search was given," "such as the officers' conduct, the number of officers present, and the duration of the encounter." United States v. Boone, 245 F.3d 352, 361–62 (4th Cir. 2001). Accordingly, the Court will first inquire into whether Defendant gave consent. If the Court concludes that the evidence supports such a finding, the Court will then consider whether the consent given by the Defendant was knowing and voluntary.

First, the Court addresses whether Defendant gave consent for the officers to enter his hotel room. After reviewing the evidence before the Court, Defendant gave such consent. First and foremost, Defendant's actions are consistent with such a showing. Officer Prescott testified that upon asking for consent to enter, Defendant verbally approved and then opened the door. Although the first thirty seconds of the video omits audio, the video seems to corroborate this testimony. The tape shows that after the officers and Defendant had a discussion, Officer Prescott entered as Defendant simultaneously gestured with his right hand as if to wave Prescott into the room. The video also shows that Defendant never made a clear attempt to close the door nor any other affirmative physical gesture for the officers to stop. These actions are consistent with Defendant granting consent. United States v. Hylton, 349 F.3d 781, 786 (4th Cir. 2003) ("Consent may be inferred from actions as well as words."); see, e.g., United States v. Wilson, 895 F.2d 168, 170 (4th Cir.1990) (finding consent where defendant raised his arms after agent asked permission to pat him down). In addition, there was no evidence to contradict the Government's account or otherwise explain the events shown in the video. In fact, the video disproves Defendant's version of the facts as presented in his Motion to Suppress, in which Defendant claims that after knocking and requesting consent, the officers barged into his room. The video clearly shows otherwise. As the evidence clearly supports the conclusion that Defendant gave consent to the entry, the Court

continues on to the second inquiry.

Second, the Court addresses whether Defendant's consent was knowing and voluntary. Despite Defendant's claims to the contrary, the evidence shows that Defendant's consent met this standard. Defendant's counsel claims that Defendant's youth (twenty-four years old),[6] combined with the presence of two police officers in the confined space of a hotel room, makes his consent involuntary and, consequently, invalid. However, several cases show that younger defendants, in more intimidating situations, have given knowing and voluntary consent. See United States v. Mendenhall, 446 U.S. 544, 588, 100 S. Ct. 1870, 1879 (1980) (finding valid consent when defendant, a twenty-two year-old African American female, who had not graduated from high school, was confronted by white male officers at an airport); United States v. Baker, 78 F.3d 1241, 1244 (7th Cir. 1996) (finding valid consent from a twenty-one year old defendant, who had several minor encounters with the law, after he had been approached by a single officer who had his hand on his gun). In light of this case law, the Court is unwilling to find Defendant's consent unknowing and involuntary based solely on the surrounding circumstances.

The Court's conclusion that Defendant gave valid consent to enter room 227 renders Defendant's remaining argument concerning the officers' entry irrelevant. At the hearing, Defendant argued at length that Officer Prescott's action of placing his foot against the doorjamb on the inside of the door constituted a Fourth Amendment violation. Assuming *arguendo* that the action did constitute a Fourth Amendment violation, the exclusion of all evidence resulting from the assumedly illegal entry does not follow. "[T]he Fourth Amendment's exclusionary rule applies to statements and evidence obtained as a product of *illegal* searches and seizure." United States v.

---

[6] Counsel for Defendant also argued that Defendant's inexperience with the police also played a role in rendering Defendant's consent involuntary. The Court, however, refuses to consider Defendant's experience with police, as no evidence was presented as to this fact.

9

Dowdell, 546 Fed. App'x 128, 134 n.* (4th Cir. 2013); see also Wong Sun v. United States, 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963). Here, even if Officer Prescott illegally entered the hotel room with his foot, this allegedly unlawful invasion was cured by Defendant's giving of consent. The Court has already concluded that the entry into Defendant's hotel room was justified by Defendant's valid consent. Any evidence found in the hotel room as the result of the entry could not, therefore, be a product of an illegal entry. Accordingly, the Court need not inquire into whether Officer Prescott's foot actually crossed the plane of the doorway to Defendant's hotel room.

In light of the evidence presented and the lack of any evidence to the contrary, the Court **FINDS** that the totality of the circumstances show that Defendant gave valid consent to the officers to enter his hotel room.

### 2. The Officers' Search of Defendant's Hotel Room

Counsel for Defendant also challenges the officers' subsequent search of Defendant's hotel room. This challenge, however, fails. Again, the Court will consider whether Defendant gave consent before determining whether such consent was knowing and voluntary.

First, the Court easily concludes that Defendant gave consent. Both the actions as depicted in the video and Officer Prescott's testimony clearly show that Defendant gave approval for the search of his hotel room. No evidence was introduced to the contrary. The Court, therefore, finds that Defendant gave consent to the officers to search his hotel room

Second, Defendant's consent to search his hotel room was also knowingly and voluntarily given. In addition to the issues considered in the Court's review of the entry, there are two new issues to address. First, the Court must consider whether Defendant was in custody. "[S]ensitivity to the heightened possibility of coercion is appropriate when a defendant's consent is obtained

during custody . . . ." United States v. Trueber, 238 F.3d 79, 95 (1st Cir. 2001). An individual is in custody when "a reasonable person in that situation would not feel free to leave or terminate the encounter." Boone, 245 F.3d at 362. When Prescott asked for Defendant's consent to search room 227, Defendant was in custody. At that time, Defendant knew that Prescott had already found marijuana cigarettes and paraphernalia. As a result, an objective person would certainly "not feel free to leave." This fact alone, however, is not dispositive, as "[c]onsent given while in custody may still be voluntary." Id.

The second new issue to consider is Officer Prescott's statement that, if Defendant refused to consent, the officers would detain Defendant and obtain a warrant. Such a statement by itself, however, does not render Defendant's consent involuntary. United States v. Whitehead, 428 F. Supp. 2d 447, 452 (E.D. Va. 2006) (Jackson, J.) ("That Mrs. Whitehead only gave consent after she was informed that a search warrant could be obtained does not negate the voluntariness of the consent."). However, the Court still must weigh the presence of this statement.

Despite the addition of these two additional issues, the Court nonetheless determines that Defendant knowingly and voluntarily gave consent for the searches at issue. The Defendant's actions and behavior, as shown on the video, reveal an individual who is clearly acted willingly and intentionally. In fact, at several times during these encounters, Defendant appears almost completely nonchalant and ambivalent to his situation. Therefore, the Court concludes that Defendant gave his consent to search his hotel room in a knowing and voluntary manner.

Accordingly, the Court **FINDS** that the totality of the circumstances show that Defendant gave valid consent for the search his hotel room.

### 3. The Officers' Search of Defendant's Car and Cell Phones

Finally, Defendant challenges the searches of his automobile and cell phones. As these

11

searches share the same issues, the Court will review Defendant's challenges together. Again, however, Defendant's arguments with regard to the search of Defendant's car and cell phones fail.

Defendant first argues that both of these searches were illegal because no exception to the warrant requirement applied to justify the searches. Despite Defendant's claims to the contrary, searches of automobiles and cell phones are subject to the consent exception. See Riley, 134 S. Ct. at 2494;[7] Schneckloth, 412 U.S. at 219, 93 S. Ct. at 2043–44; see, e.g., Florida v. Jimeno, 500 U.S. 248, 250-52 111 S. Ct. 1801, 1803–04 (1991). In applying this doctrine, the Court once more considers whether Defendant gave consent and, subsequently, whether this consent was knowing and voluntary.

Upon making the first inquiry, the Court concludes that the evidence again shows that Defendant consented to these searches. Officer Prescott's testified that Defendant verbally permitted the search of his vehicle. The video clearly corroborates this testimony. In addition, no evidence contradicted the Government's account. Defendant's only objection to the search of his cell phone was in his Motion to Suppress, where he simply stated that he "does not recall whether or not he gave consent for the search of the cell phone." (Mot. to Suppress, ECF No. 18, at 3). Such a statement is insufficient to rebut the Government's evidence of consent.

Secondly, the consent given by Defendant was clearly voluntary. The case for finding that Defendant's consent to the searches of Defendant's car and cell phones was knowing and voluntary is stronger than the case for finding the consent to search the hotel room was knowing

---

[7] In support of his argument, Defendant quotes Riley, a recent decision by the Supreme Court of the United States, in which the Supreme Court held that the warrant requirement applies to searches of cell phones. 134 S. Ct. at 2493. Upon interpreting Riley, however, this Court does not believe that Riley imposed a blanket rule requiring a warrant for all searches of cell phones without exception. In fact, the language of the case indicates that the Supreme Court intended to incorporate existing exceptions to the warrant requirement along with the warrant requirement itself. Id. ("[E]ven though the search incident to arrest exception does not apply to cell phones, *other case-specific exceptions may still justify a warrantless search of a particular phone.*" (emphasis added)). Accordingly, this Court concludes that Riley allows searches of cell phones justified by valid consent.

and voluntary. After all, the Court need not consider whether the officers stated that they would get a warrant if Defendant refused to consent, as no such statement was made in relation to the searches of Defendant's automobile and cell phones. As the Court previously determined that the consent to search room 227 was given knowingly and voluntarily, the Court concludes the same as to the searches of Defendant's car and cell phones.

Accordingly, the Court **FINDS** that the totality of the circumstances show that Defendant gave valid consent for the search his automobile and cell phones.

With the Fourth Amendment issues decided, the Court turns to the Fifth Amendment issues raised by Defendant.

C.   **Fifth Amendment Issues**

The Fifth Amendment provides, in pertinent part, "[n]o person shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. This protection applies not only to courtroom proceedings, but also to out-of-court, custodial interrogations. Miranda v. Arizona, 384 U.S. 436, 467–68, 86 S. Ct. 1602, 1624–25 (1966). Under Miranda, statements made during custodial interrogations are admissible only if a defendant is first warned that he has the right to remain silent; anything he says can and will be used against him; he has a right to an attorney; and, if he cannot afford an attorney, one will be provided to him. Id. at 444, 86 S. Ct. at 1612. If, after receiving these warnings, a defendant invokes his right to counsel, all interrogation must cease until that defendant is given an opportunity to confer with an attorney and to have that attorney present during any future questioning. Id. at 473–74, 86 S. Ct. at 1627–28.

In the case at bar, Defendant initially contested whether (1) Defendant was given Miranda warnings and (2) whether Defendant invoked his right to counsel. However, at the hearing, counsel for Defendant admitted that the video clearly shows that Officer Prescott properly gave Defendant

Miranda warnings before questioning him. Accordingly, the only remaining issue before the Court is whether Defendant invoked his right to counsel. The Court concludes that he failed to do so.

Invocation of the Miranda right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." McNeil v. Wisconsin, 501 U.S. 171, 178, 111 S. Ct. 2204, 2209 (1991). Furthermore, "to invoke the right to counsel and prevent further interrogation, a suspect must unambiguously request the assistance of counsel." Burket v. Angelone, 208 F.3d 172, 198 (4th Cir. 2000). "If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." Davis v. United States, 512 U.S. 452, 461–62, 114 S. Ct. 2350, 2356 (1994). For a defendant to unambiguously and unequivocally invoke the right to counsel, he or she "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Id. at 459, 114 S. Ct at 2355. Furthermore, it is the defendant's burden to prove that he or she invoked this right. Koras v. Robinson, 123 Fed. App'x 207, 212 (6th Cir. 2005) ("The Supreme Court's decision in Davis indicates the burden is on the defendant to prove that he clearly invoked his right to counsel in the first instance.").

Here, Defendant has not established that he invoked his right to counsel. In his testimony, Officer Prescott stated that Defendant asked for a "detective or a lawyer." The audio of the video does not contradict this testimony, as the content of Defendant's speech on the tape is indecipherable. Defendant, however, presents no evidence that offers an interpretation or explanation of Defendant's statement, aside from a general refutation of Prescott's interpretation. Accordingly, the Court adopts the Government's version of the facts.

Based on these facts, Defendant did not invoke his right to counsel. A simple interpretation

of Defendant's statement reveals he wanted to talk to an attorney or, in the alternative, a detective. The Fourth Circuit has found that vague statements alluding to, or inquiring about, a request for an attorney do not amount to an invocation of the right to counsel. See, e.g., United States v. Williams, 446 Fed. App'x 587, 590 (4th Cir. 2011) (finding defendant's statement that "I don't think I want to say anything more until I talk to a lawyer" was not clear, unequivocal invocation of his right to counsel); United States v. Smith, 281 Fed. App'x 198, 200 (4th Cir.2008) ("I think I might need to talk to a lawyer."); Johnson v. Harkleroad, 104 Fed. App'x 858, 867 (4th Cir.2004) ("[M]aybe I should stop talking and get a lawyer."); United States v. Wheeler, 84 Fed. App'x 304, 306 (4th Cir.2003) ("[I] want[ ] to call my family to see about a lawyer."); Burket v. Angelone, 208 F.3d 172, 199 (4th Cir. 2000) ("I need somebody that I can talk to."); Mueller v. Angelone, 181 F.3d 557, 573 (4th Cir. 1999) ("Do you think I need an attorney here?"). A less concrete statement requesting *either* a lawyer or a detective is similarly inadequate as to constitute an unambiguous and unequivocal request for counsel.

Accordingly, the Court **FINDS** that Defendant did not invoke his right to counsel.

### III. CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** the Defendant's Motion to Suppress.

The Clerk is **DIRECTED** to forward a copy of this Order to the United States Attorney, Defendant, and all Counsel of Record.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, VA
October 29, 2014